Your Honor, this case will be brought to you at 16-0685. The people of the State of Illinois claim to have been the second Kleinschmidt defendant of the case. I bring you now the death of the plaintiff's husband, Mr. Stephen F. Walker. I bring you now the death of the plaintiff's athlete, Mr. David A. Furness. Good afternoon, gentlemen. All right. Mr. Walker, whenever you're ready, you may proceed. Good afternoon, Your Honor. Good afternoon. May I please have the floor? I'm Stephen Walker, and I represent... Could you pull that just a little closer to you? Thank you. If you're comfortable, I don't want you to have to bend over so we can hear you. Maybe just speak a little louder, a little more loudly, please. Is this better? Yeah, but just don't stand. You don't catch it if you just project. It's a big room. Just project. Okay. Thank you. I'm Stephen Walker, and I represent the defendant, Ms. Tiffany Kleinschmidt, on behalf of the Office of the State of Illinois Defendant. Your Honor, there is a single issue presented in this case, broken up into two parts. The primary part focuses on whether Ms. Kleinschmidt presented a prima facie case based on the evidence presented to the trial court, and if the trial court erred in finding that she had not based on the evidence. The second question, if it is true that Ms. Kleinschmidt's testimony was sufficient for the court to consider the evidence and find that she did not make a prima facie case, is whether the court misapplied the law. Regarding the first point, if a prima facie case is made when the trial court reviews, when the defendant presents some evidence that requires the state to counter that evidence, a prima facie case is evaluated based on the preponderance of the evidence standard. And in this case, Ms. Kleinschmidt testified at the motion to quash her arrest that she had not committed any traffic violations to her knowledge. When she was first stopped, what is the standard that the officer had to consider? Was it probable cause, or was it a reasonable grounds to believe that she was going to or about to commit an offense? The standard in this case would be reasonable grounds. Articulable and reasonable, but... Articulable suspicion. Okay. And in this case, Ms. Kleinschmidt testified that, to her knowledge, there was no basis, but she testified also that the officer told her that she was pulled over for riding the line. Counsel, but if we as an appellate court must consider not just what happened at the motion to suppress, but actually the entire record in reviewing a ruling by a trial court on a motion to suppress, correct? Correct. So then why does it matter if there was or wasn't testimony at the motion to suppress that the defendant actually crossed the center line as opposed to riding on the center line, if at this bench trial it was stipulated that if the officer were to testify at this bench trial, the officer would testify that she actually crossed the center line? Your Honor, we would argue procedurally that if that was the case, the State could have presented that evidence on rebuttal. And we would also state that if the evidence was offered on rebuttal instead of with defense counsel attempting to appeal this issue, then defense counsel would have been able to cross-examine the officer and perhaps elicit more facts that would have been disfavorable to the State. So what do you think they had to establish at the time or what issues do you think are lacking in this particular situation? Our argument is simply that the defendant put forward a prima facie case. Now, if the State had testimony from the officer or other evidence to present at that time, then they could have presented it and the trial could have continued as normal. The judge could have made his ruling based on that evidence, finding that the motion to cross should be denied. Unfortunately, it seems as though the trial judge jumped the gun a bit and decided without hearing all the evidence, simply based on his client's testimony, that the motion to cross should be denied. And what specifically did the judge say? He waived. So defense counsel argued that they presented a prima facie case. And the judge considered the evidence again and then came back and stated that he was sticking with his ruling because the evidence presented was sufficient for him to grant the State a directive verdict. Was this a combined case where they were also considering a motion to rescind the summary suspension? Yes. Okay. All right. So your second point? My second point is that even assuming argument, that this client's testimony was sufficient to find in favor, well, to find that there was some evidence that rebutted her testimony, that right in the line is not the same thing as a deviation under the improper lane usage statute. And why not? Well, according to People v. Hackett, an investigatory stop is proper where an officer observes multiple lane deviations. In that case, the lane deviation encompassed crossing over the line multiple times, crossing over the line multiple times. Both past and present rulings on this same issue, both before and after Hackett, have found that a driver deviates when they cross over a line. There has never been a case, to my knowledge, that states that righting the line is sufficient to constitute a deviation, and the improper lane usage statute merely states that a driver must drive as nearly as practicable within a single lane of traffic. Practical, synonymous with possible or reasonable, does not mean perfect. Well, but if you had one car driving in one direction with one tire on the line, and you had a lane going the other way, the opposite way, and a car coming the opposite way with one tire on the line, there would really be a problem there, wouldn't it? So the language of the statute talks about within the lane, does it not? Didn't you just read within? That's correct, within. So within, apparently, wouldn't mean on. I would argue that even if you're on the line, depending on how much older you are on the line, that these facts weren't elicited at the time, so we don't know, that you can still be within your lane. I mean, there's no clear demarcation where you started to be on somebody else's lane when you're on the line. And in that scenario, both drivers could adjust before striking one another because they would see each other coming. The dangers in carrying a driver on the line, if there are any dangers, are minimal as compared to what the statute seems to have been trying to resolve. An individual crossing the line presents an obvious issue because even in a scenario where there are two lanes of traffic going in the same direction, another driver can't just worry about a barrel lane or stop or break, which might cause an accident. Similarly with weaving the line. Right. But Hackett and Flint talk about actually crossing the line. Our case is not crossing the line, except if we were to consider what the information was stipulated to at the bench trial, which was that the officer was going to testify that she actually crossed the line. Correct. And if the officer had testified that way at the hearing, then, again, defense counsel would have been able to cross-examine the officer or present additional evidence. The entire purpose of... Additional evidence, for example. Defense counsel at the trial, when they were arguing their motion to reconsider, stated that they had a videotape. This videotape was never admittedly to evidence, but defense counsel seemed to believe that it was definitive proof that Ms. Klein had not committed a traffic violation. Again, the entire time after the motion to plot was heard was spent with defense counsel attempting to appeal the issue. In fact, he appealed in error to his court early and then was told that a judgment needed to be entered before the issue could be heard. I grew up both prosecuting and being a trial court judge when you had to prove both ends of the statutory authority. Number one, that you stayed within your lane as nearly as practicable, and number two, there had to be an endangerment of someone or some car or something if you moved outside of your lane. That no longer is the case, correct? That is correct. The statute currently reads United States... Although the statute reads that way, the Supreme Court has said it's just the issue of the line and staying within your lane. Is there any distance involved in this? You've gone 100 feet over, you've ridden the line. I have a feeling as I've read some of these cases that the Supreme Court was interested in tennis because in tennis, if the ball hits the line, you still have to hit it back or you're going to lose that point. So is there any distance that a car should travel in order to have this violation or is it a mere movement and back? I'm sorry. I'm afraid I don't understand this question. Do you have to go 20 feet, 30 feet, 40 feet over the line and down the road or can you just touch that line and come back? I see. I would say that with the way the statute has been drafted, it says within the line. There is no case law or statutory history that suggests that within the line means perfectly straightforward, not touching the line ever. If somebody drives occasionally, maybe a truck is coming down the road or they just feel safer hugging a certain side. For instance, if you're going near a ravine, you may be closer to the line because you don't want to be in a drop-off. Which lane? I'm sorry? Which lane? The center lane. Okay. Well, here she testified that she didn't commit a traffic violation and that the officer said that she had ridden on the line for 50 to 75 feet. So was that a sufficient prima facie case to shift the burden to the state? I would argue that it was because what the officer told her is not the same thing as the officer testifying, that that is in fact what he said. In fact, if we look at the stipulated bench trial, the officer would have, in fact, testified that she crossed the line. So, again, we have conflicting accounts. All we're asking is that this matter be prevented for a proper hearing on the motion to quash. There's one other issue that might be before us, and that is did your client at the motion to suppress testify that there was anything in her lane that would prevent her from staying in her lane or from not moving? You said a ravine over here, you might move toward the center line. Did she testify that there was anything in her way? She did not testify to that. There was no testimony, to my knowledge, as to the road conditions other than that. It was clear that she didn't say whether or not there was a pothole or anything to that effect. And perhaps one could read something into that absence. But, again, a proper hearing on this motion would have presented all this evidence. I'm sorry, all this evidence meaning what? What was the defense deprived of? The defense was deprived of a chance to cross-examine the officer, to present any additional evidence that may have that. Again, they had a videotape at the motion to reconsider, which defense counsel stated was definitive proof that she had not committed any traffic violations. So that would have corroborated her testimony because she testified. Correct. It would have corroborated her testimony. Well, the defense could have called the officer themselves, right, if they wanted his testimony. The defense, in this case, believed they had made a premonition case, and then the judge made his ruling to direct a verdict for the state. At that point, he had denied their motion. And even during the motion to reconsider, when they were attempting to present additional evidence, he held his initial ruling as being proper. There is still a law firm, to the best of my knowledge, practicing in this 13-county area who routinely on a motion to suppress calls a police officer, obviously not his witness, but calls the police officer on the motion to suppress and said, you're so-and-so, you were on duty this day, yes. Did you see my client driving? Yes. Did my client do anything that she or he could be convicted for that you observed? And more often than not, the officer will say no. Defense attorney sits down and says, judge, no more evidence. So your client could have called the police officer, correct, and had that opportunity to cross-examine. May I answer the question? Yes. I can't speak to defense counsel's strategy at that time. The only thing I have before me is the record, and based on the record, I believe that the trial court prematurely ended the hearing on the motion to quash. All right. You'll have an opportunity to apply. Thank you. You're not playing tennis? Assembling furniture. Would you like to sit rather than stand? No, I think I can stand for this few minutes. Assembling furniture. Well, we won't call you. Yeah, it's embarrassing. To some previous questions, distance doesn't matter. The courts have said that in Hank and Flint that you can go over for a couple seconds, or for a foot, that's a deviation, and that's sufficient to provide reasonable articulate suspicion for the police officer to pull over the driver. As far as defendant saying there are no cases, I just want to point out a case in this court Rush talked about. The defendant did drive over a center lane, but also the officer used the fact that he was riding on the center lane and on the fog lane as information to help pull that driver over also, because those are indications of someone who maybe is under the influence, because they can't stay within the lane. Didn't the officer, though, initially tell her what she's stopping for, what they do, while you were riding on the line? Right, riding on the line, but that is a deviation. I think the general definition of within a lane, you know, the statute says a motorist must drive a vehicle as nearly as practicable entirely within one lane. I think the common understanding of that is when you're within a lane, you're not touching the lines on either side, and I think that's certainly what the legislature decided and wanted when they passed this particular statute. I think Hick and Flint also tell you that, you know, they're saying, you know, this person is making some movements that are unusual. It's not that hard to stay within the lane. Maybe this is indicating that this person is under the influence, and therefore we have that reasonable articulable suspicion to pull that person over. Do we need to decide that question about the line in order to rule on the court's denial of the motion to suppress, given the stipulation? Well, the stipulation, I would say no, that you don't have to make that decision. The fact is, though, I guess it could come back in a post-conviction and claim of infectedness of counsel by stipulating to that, and certainly I think this is a latent deviation. Riding on a center line is that line deviation, as you pointed out. The fact that if one car is on the center line and the car coming the other way is on the center line, we're going to have some real problems there. I think that's just common sense, and I think that's what the court is looking at. This court, when it decided Flint, the Supreme Court, when it decided Hackett, Rush, this court decided, and the third district, Flint. I think it's just a matter of policy. The courts seem to be indicating we want people to stay within the lane, and it's so important because these are heavy vehicles going at fast pace to protect the public from drunk drivers and just regular driving that we need to give that tool to the police officer to establish that fact and pull them over. We don't need probable cause. We don't even need the fact. Even if the driver said, well, there were some obstacles, then maybe we'd have a crime of facial case because it would rebut some of that testimony where she stated that, you know, he told me that I was riding the line 50 to 75 feet. In that case, then a judge maybe would have made a mistake in deciding that there was no crime of facial case. But in this, she doesn't talk about obstacles. There's no evidence the officer ever stated anything about obstacles that she had moved, and that's, again, going to the probable cause determination. So I think it's clear. I think the courts and the General Assembly, they've made it clear that we want a safety reason there. We want to follow this very closely. You can see in the language in the cases. They say just one little deviation. It doesn't have to be far. So when you're riding on the line, I guess your court, you know, this court has to decide if that is a deviation if you get to that question. And just one last thing. Excuse me. We have to remember that the validity of the staff only goes to what the officer's knowledge is. So, you know, we can speculate that he could have said or she could have said, oh, I had to avoid something, you know, so I wouldn't hit it. But that wouldn't even matter in this case for a decision of whether there was a reasonable suspicion because we have to look at when the officer was observing us. If he didn't observe anything else, we just have to look to his, what he knew at that time, even if there was an obstacle and that's what we have, you know, when we have the hearing. So I think the judge made the correct decision in deciding that she did ride the line. She didn't rebut it. In fact, is that this defendant did, was drinking and the police officer had a reasonable suspicion that she was. We would also ask that if that, if you, if that stipulation by defense counsel was enough and you don't consider that oversight, that you do not have to deal with this question. Any other questions, Your Honor? Thank you. Mr. Walker. First, I would just like to point out that the case law cited by the state, all of those cases involve a line crossing. These cases were decided based on a line crossing. In this case, we do not have a line crossing. We have Ms. Kleinsmith reportedly riding a line. Well, for purposes of our review, we have line crossing because we have the officer stipulation for the stipulated bench trial. Correct. Okay. But again, the procedural issue with the trial court finding that the defense counsel, that defense counsel failed to make a prima facie case is the crux of this matter. This is why defense counsel agreed to the stipulation in order to move this forward on appeal to address the motion in quash. The intent of all the parties at that time was simply to move this forward on appeal, which is why you had something of a comedy of errors with defense counsel appealing early, with the trial judge trying to define what defense counsel's intent was when he was agreeing to the stipulated bench trial, and also that they initially moved to hold any sentencing until after this issue was reported on appeal, when we're told that, excuse me, I missed something. Yes, you're. Sorry. To. There's not a final judgment until it's sentenced. Right, exactly. There was no final judgment until it's sentenced, which was another issue, because the parties initially agreed that they would postpone enforcing any sentencing until after this issue was heard on appeal. As far as all of the ifs in this case, again, a proper hearing could have resolved many of those issues. There wouldn't be these questions of what the officer, what defense counsel would have done, what the state would have presented, what defense counsel would have presented, if the court had not directed a verdict for the state. So, again, all we're asking is that there's not a deed remanded for a hearing on a proper hearing on the motion to quash. Thank you. Thank you. All right. Thank you, gentlemen, for your argument today. We will take the matter under advisement. A decision in due course. We are now going to stand adjourned. And everyone be careful leaving.